[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE CROSS-COMPLAINT
This suit arises out of injuries allegedly suffered by a child when he rolled out of his bed and came in contact with an electric baseboard. The mother brought suit in the child's behalf against the landlord owners and the managers of the rental property.
The defendants have filed an answer with special defenses and a cross claim. In the cross claim the defendants in two counts allege that the mother's actions led to the child's injuries in that she was negligent and that the negligent mother was in "exclusive control of the situation involving the minor."
Based on the claims made the defendant seeks apportionment of liability and "indemnification for any judgment that may be awarded against these defendants in favor of the minor plaintiff."
The defendants have withdrawn their claim for apportionment but still seek to pursue their indemnification claim. The plaintiffs move to strike that claim. CT Page 1588
An indemnification action is predicted on the notion that if a party secures a judgment against the tortfeasor defendant, the defendant can make an indemnification claim against another party under Kaplan v. Merberg, 152 Conn. 405, 412 (1965), claiming that party should satisfy the judgment since he or she was in actual control of the situation and that party's active negligence caused the injury.[1]
The plaintiff's judgment would have to be satisfied. The problem is that if the defendants' claim were to prevail here the judgment would be satisfied based on the mother's negligence toward the child.
Under the doctrine of parental immunity a child can't come into court to sue a parent for personal injuries suffered at the hands of a parent. The doctrine was first recognized in Hewlettv. George, 9 So. 885 (Miss. 1891) for any negligence claim then extended to any personal injury claim. McKelvey v. McKelvey,77 S.W. 664 (Tenn. 1903). Connecticut accepted the doctrine inMesite v. Kirchenstein, 109 Conn. 77 (1929), and recently reaffirmed in Squeglia v. Squeglia, 234 Conn. 259, 264 (1995). At page 269 the Squeglia court noted that the doctrine is "particularly applicable in the area of parental supervision and discretion with respect to care and control of a minor child." The court went on to refer to Mesite and adopted its reasoning that the doctrine is based on the notion that obedience of the child is essential to family unity, allowing such actions would undermine the authority and disturb the peace of family life. Id., p. 164.
The defendants first argue that the result here should be different since this indemnification claim is not a "direct action" by the child against the parent. The final result of the litigation, however, will be to permit a judgment for the child to be satisfied against the actively negligent parents. The purposes of the parental immunity doctrine would be defeated. Such an indemnification action would create some interesting problems. Would the parent or the defendants not have the right to call the child to try to establish the existence of parental negligence, or to show its non-existence? Since the child plaintiff's action must be brought by the parent, wouldn't there be an underlying possibility of conflict between the child and the parent? Should the child have a separate lawyer?
There have been exceptions to the parental immunity doctrine CT Page 1589 but they are "exceptions" and none of the exceptions bears any analogy to the issue here. The doctrine has been abrogated by statute, § 52-572(c), where there is an allegation of negligent operation of a motor vehicle, aircraft or other waterborne vessel. Also the doctrine is not applied in cases of sexual assault and exploitation. Henderson v. Woolley, 30 Conn. 472,486 (1994). There the court reasoned the heinous nature of the parent's activity had already destroyed family harmony and the parent breached a duty owed to the public at large. Another situation where the doctrine doesn't apply is where the child was emancipated prior to the tortious conduct, Wood v. Wood,135 Conn. 280, 283 (1948); that is not the case here.
Another exception to the doctrine referred to by the defendants is the situation where a minor is injured by a parent who's negligence in the course of employment injured the child.Chase v. New Haven Waste Material Corp., 111 Conn. 377, 380
(1930). One of the reasons for abrogating the parental immunity doctrine in the employment context is the availability of insurance to the parent employer in his or her business.Dezenutis v. Dezenutis, 200 Conn. 290, 299 (1986). But that court and especially Squeglia at 234 Conn., page 267, emphasized that the availability of insurance was not the "touchstone" for deciding whether to abrogate the doctrine. The court said inDezenutis, and the Squeglia court approved the language that said, "in most instances family harmony will not be jeopardized by allowing suits between parents and children arising out of business activities conducted away from the home," and also the further reasoning in Dezenutis that the duty breached in an employment situation was owed to the public generally — "the mishap might well have occurred to any other member of the public who passed that way." 200 Conn. at page 299; Squeglia, 234 Conn. at pages 267-268. Thus in the employment situation there is less likely to be a disruption of family harmony.
Here the alleged negligence of the mother consisted of placing of the child's bed, failure to use a bed rail or tuck him into the bed. These are hardly duties owed to the general public and the alleged negligence occurred right in the home.
The motion to strike the cross claim is granted.
Corradino, J.